**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF CONNECTICUT**

CHAD J. PETIPAS AND DIANA TRIADO,
*Plaintiff(s)*,
v.

BRAYFIELD ET. AL,
*Defendant(s)*.

No. 3:24-cv-01790 (VAB)

**RULING AND ORDER ON MOTION TO DISMISS**

Chad J. Petitpas and Diana Tirado ("Plaintiffs") have filed this action against Lisa

Brayfield, Brian Plourd, Matthew Wilkey, and April Embleton ("Defendants"), asserting claims

under 42 U.S.C. § 1983 arising from Chad Petitpas's parole supervision and the Approved

Supervisor process. Second Amended Complaint, ECF No. 66 (Apr. 15, 2025) ("Second Am.

Compl.").

Three of the Defendants, Brayfield, Plourd, and Wilkey, have jointly moved to dismiss

the Second Amended Complaint. Mot. to Dismiss, ECF No. 99 (July 1, 2025). April Embleton,

the remaining Defendant, has separately moved to dismiss. Mot. to Dismiss, ECF No. 87 (June

17, 2025).

For the reasons explained below, Defendants' motions to dismiss are **GRANTED** in part

and **DENIED** in part.

All official-capacity claims against Lisa Brayfield, Brian Plourd, and Matthew Wilkey,

any Fourteenth Amendment due process claims, any supervisory liability claims against Brian

Plourd, any deliberate indifference and supervisory claims against Matthew Wilkey, any First

1

Amendment family and intimate association claims against Lisa Brayfield and Brian Plourd, and all claims against April Embleton are dismissed with prejudice.

This case will proceed only on the First Amendment retaliation claim against Lisa Brayfield in her individual capacity.

## I.    FACTUAL AND PROCEDURAL BACKGROUND

### A. Factual Allegations

The following facts are drawn from the operative Second Amended Complaint, ECF No. 66 ("Second Am. Compl."), and its attached exhibits.

### i. Background and the Approved Supervisor Process

Chad J. Petitpas served 16 and one-half years of incarceration and he alleges that he "maintained exemplary rehabilitation and all program completion records." Second Am. Compl. at 2. He further alleges that he has "demonstrated commitment to lawful living and community contribution." *Id.*

Chad J. Petitpas and Diana Tirado allege that they sought an "Approved Supervisor Meeting" in connection with Tirado's requested residence approval. Second Am. Compl. at 11. They further allege communications involving parole officials and a victim advocate during that process. Second Am. Compl. at 13.

### ii. Conduct Attributed to Lisa Brayfield

Chad Petitpas and Diana Tirado jointly allege that, after supervision was transferred to Brayfield, she interfered with Petitpas's housing by telling his landlord that the property would be listed on the Connecticut Sex Offender Registry, which they allege led to attempted eviction. Second Am. Compl. at 5. They further allege that Brayfield imposed "arbitrary and punitive conditions," including excessive and unannounced home visits. Second Am. Compl. at 6.

2

With respect to employment, they allege that Brayfield required disclosure to Petitpas's employer as a condition of approving an out-of-state work pass, and that she later handled work-pass renewals in an arbitrary manner, including failing to provide a renewed pass and later issuing a pass with incorrect address information. Second Am. Compl. at 6–7.

With respect to the Approved Supervisor process, they allege that Brayfield refused to schedule an approved supervisor meeting if Petitpas's attorney was present, and that the process materials omitted victim advocate contact information. Second Am. Compl. at 6–7.

### iii. Conduct Attributed to Brian Plourd and Matthew Wilkey

Chad Petitpas and Diana Tirado jointly allege that Brian Plourd participated in decisions affecting the Approved Supervisor process. Second Am. Compl. at 10–11. They specifically allege that Plourd participated in the denial of attorney presence at the Approved Supervisor meeting, and that Brayfield stated the directive came from both herself and her supervisor. Second Am. Compl. at 11. They also allege that Plourd ignored communications from their legal counsel regarding the Approved Supervisor application process. Second Am. Compl. at 10.

They allege that Matthew Wilkey was contacted regarding their complaints and failed to intervene after being informed of the issues they raised. Second Am. Compl. at 12.

### iv. Conduct Attributed to April Embleton

Chad Petitpas and Diana Tirado jointly allege that April Embleton served in a victim-advocate role in connection with the Approved Supervisor process and that her participation was required for that process to proceed. Second Am. Compl. at 13, 16. They further allege that Embleton did not provide the necessary contact information or otherwise facilitate the process, including allegations that required victim-advocate contact information was omitted from process materials and that parole officials did not provide her contact information despite its

3

asserted necessity to the application process. Second Am. Compl. at 14–15. They also allege that Embleton stopped responding and refused to assist, including by refusing to provide her supervisor's name, refusing to provide a contact phone number, refusing to provide written policies, and refusing to meaningfully help with the Approved Supervisor process. Second Am. Compl. at 16. They further allege that Embleton's non-participation prevented the process from moving forward, and that parole officials stated they could not proceed because the victim advocate would not be present. *Id*.

### v. Alleged Impact on Family Association

Chad Petitpas and Diana Tirado jointly allege that Brayfield imposed restrictions affecting Tirado's household, including a restriction that Tirado could not have minor children, including her own, visit her residence, even when Petitpas was not present. Second Am. Compl. at 15. They also allege that Brayfield impeded the Approved Supervisor process by creating barriers to Tirado's approval, including conditions they characterize as arbitrary. *Id.*

### B. Procedural History

On April 15, 2025, Chad Petitpas and Diana Tirado filed the operative Second Amended Complaint. ECF No. 66.

On June 17, 2025, April Embleton filed a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6). ECF No. 87.

On June 24, 2025, Chad Petitpas filed a memorandum in opposition to April Embleton's motion to dismiss. ECF No. 96.

On July 8, 2025, April Embleton filed a reply in support of her motion to dismiss. ECF No. 107.

On July 1, 2025, Lisa Brayfield, Brian Plourd, and Matthew Wilkey filed a motion to dismiss. ECF No. 99.

On July 1, 2025, Lisa Brayfield, Brian Plourd, and Matthew Wilkey filed a memorandum in support of their motion to dismiss. ECF No. 100.

On July 9, 2025, Chad Petitpas filed a memorandum in opposition to the motion to dismiss filed by Lisa Brayfield, Brian Plourd, and Matthew Wilkey. ECF No. 109.

On July 13, 2025, Lisa Brayfield, Brian Plourd, and Matthew Wilkey filed an amended and corrected memorandum in support of their motion to dismiss. ECF No. 111.

On July 23, 2025, Lisa Brayfield, Brian Plourd, and Matthew Wilkey filed a reply in support of their motion to dismiss. ECF No. 115.

On July 28, 2025, Chad Petitpas and Diana Tirado filed a motion for leave to file sur-replies addressing ECF No. 107 and ECF No. 115. ECF No. 116.

On July 30, 2025, the Court granted the motion for leave to file a sur-reply and set a deadline for the sur-reply. ECF No. 117.

On August 5, 2025, Chad Petitpas filed a sur-reply addressing the motion-to-dismiss briefing. ECF No. 118.

On August 13, 2025, Chad Petitpas filed a motion to supplement the record with newly discovered evidence. ECF No. 119.

On December 1, 2025, Chad Petitpas and Diana Tirado filed a notice of continuing constitutional injury and supplemental evidence directed to Defendants' mootness arguments. ECF No. 121.

On December 21, 2025, Lisa Brayfield, Brian Plourd, and Matthew Wilkey filed a motion to strike the notice. ECF No. 122.

On December 30, 2025, Chad Petitpas filed a memorandum in opposition to the motion to strike. ECF No. 123.

On January 12, 2026, Lisa Brayfield, Brian Plourd, and Matthew Wilkey filed a reply in support of the motion to strike. ECF No. 124.

## II.    STANDARD OF REVIEW

To survive a motion to dismiss under 12(b)(6), a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a). Any claim that fails "to state a claim upon which relief can be granted" will be dismissed. Fed. R. Civ. P. 12(b)(6). In reviewing a complaint under Rule 12(b)(6), a court applies a "plausibility standard" guided by "[t]wo working principles." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). First, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.*; *See also Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) ("While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations . . . a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." (internal citations omitted)). Second, "only a complaint that states a plausible claim for relief survives a motion to dismiss." *Iqbal*, 556 U.S. at 679. Thus, the complaint must contain "factual amplification . . . to render a claim plausible." *Arista Records LLC v. Doe 3*, 604 F.3d 110, 120 (2d Cir. 2010) (quoting *Turkmen v. Ashcroft*, 589 F.3d 542, 546 (2d Cir. 2009)).

When reviewing a complaint under Federal Rule of Civil Procedure 12(b)(6), the court takes all factual allegations in the complaint as true. *Iqbal*, 556 U.S. at 678. The court also views the allegations in the light most favorable to the plaintiff and draws all inferences in the

plaintiff's favor. *Cohen v. S.A.C. Trading Corp.*, 711 F.3d 353, 359 (2d Cir. 2013); *See also York v. Ass'n of the Bar of N.Y.*, 286 F.3d 122, 125 (2d Cir. 2002) ("On a motion to dismiss for failure to state a claim, we construe the complaint in the light most favorable to the plaintiff, accepting the complaint's allegations as true.").

A court considering a motion to dismiss under Rule 12(b)(6) generally limits its review "to the facts as asserted within the four corners of the complaint, the documents attached to the complaint as exhibits, and any documents incorporated in the complaint by reference." *McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 191 (2d Cir. 2007). A court may also consider "matters of which judicial notice may be taken" and "documents either in plaintiffs' possession or of which plaintiffs had knowledge and relied on in bringing suit." *Brass v. Am. Film Techs., Inc.*, 987 F.2d 142, 150 (2d Cir. 1993); *Patrowicz v. Transamerica HomeFirst, Inc.*, 359 F. Supp. 2d 140, 144 (D. Conn. 2005).

A plaintiff's "[f]actual allegations must be enough to raise a right to relief above the speculative level" and assert a cause of action with enough heft to show entitlement to relief and "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 555, 570. A claim is facially plausible if "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.

Although the Federal Rules of Civil Procedure do not require "detailed factual allegations," a complaint must offer more than "labels and conclusions," "a formulaic recitation of the elements of a cause of action," or "naked assertion[s]" devoid of "further factual enhancement." *Twombly*, 550 U.S. at 555–57. Plausibility at the pleading stage is nonetheless distinct from probability, and "a well-pleaded complaint may proceed even if it strikes a savvy

judge that actual proof of [the claim] is improbable, and . . . recovery is very remote and unlikely." *Id.* at 556 (internal quotation marks omitted).

## III.    DISCUSSION

### A. The Official-Capacity Claims

The Eleventh Amendment bars suits for damages against a state or state officials acting in their official capacities unless the state has waived its immunity or Congress has validly abrogated it. *Kentucky v. Graham*, 473 U.S. 159, 169 (1985) (holding that "the Eleventh Amendment bars a damages action against a State in federal court"). An exception exists where a plaintiff seeks prospective declaratory or injunctive relief to remedy an ongoing violation of federal law. *Ex parte Young*, 209 U.S. 123, 159–60 (1908) (holding that when a state officer enforces an unconstitutional enactment, "he is in that case stripped of his official or representative character and is subjected in his person to the consequences of his individual conduct"). That exception, however, does not apply to claims that are retrospective in substance or seek relief for completed conduct. *Papasan v. Allain*, 478 U.S. 265, 277–78 (1986) (explaining that *Young* "has been focused on cases in which a violation of federal law by a state official is ongoing as opposed to cases in which federal law has been violated at one time or over a period of time in the past").

Brayfield, Plourd, and Wilkey argue that all claims asserted against them in their official capacities are barred by sovereign immunity because Plaintiffs have not alleged a waiver of Eleventh Amendment immunity or congressional abrogation. Defs.' Mem. in Supp. at 15–16 (arguing that "Plaintiffs have not alleged that the Defendants waived their Eleventh Amendment sovereign immunity in this case, nor that Congress has expressed an unmistakable intention to

abrogate the State's sovereign immunity, and thus all of the Plaintiffs official capacity claims against the Defendants for money damages must be dismissed").

They further contend that Plaintiffs' requests for declaratory and injunctive relief are retrospective in nature and therefore fall outside the *Ex parte Young* exception. *Id*. at 17–18 (arguing that the exception "does not permit judgments against state officers declaring that they violated federal law in the past""). They emphasize that Petitpas's parole supervision has changed over time and that Brayfield no longer supervises him, defeating any plausible allegation of an ongoing violation attributable to these Defendants. *Id*. at 16 (stating that "Defendant Brayfield is no longer the Plaintiff's parole officer. P.O. Huff is the Plaintiff's current parole officer").

Chad Petitpas and Diana Tirado respond that they seek forward-looking relief to remedy ongoing constitutional injuries. Pls.' Mem. in Opp'n at 5 (asserting that "Plaintiffs seek prospective injunctive relief for ongoing constitutional violations, which falls squarely within the *Ex Parte Young* exception to Eleventh Amendment immunity"). They further contend that Defendants' alleged obstruction of the approved supervisor process remains ongoing. *Id*. at 10–11 (alleging "obstruction of the approved supervisor process, despite compliance with all requirements").

Defendants reply that Plaintiffs' requests for injunctive and declaratory relief are retrospective or moot and therefore fall outside the *Ex parte Young* exception.  Defs.' Reply at 1–2 (stating that although Plaintiffs claim to seek prospective relief, their requests are "retrospective" and that "there is no likelihood of ongoing constitutional violations" because "Defendant Brayfield is no longer Plaintiff Chad Petitpas's parole officer").

The Court agrees.

9

At the pleading stage, the issue is whether the Second Amended Complaint plausibly alleges facts that would overcome sovereign immunity, including facts supporting waiver, abrogation, or an ongoing violation of federal law warranting prospective relief. *Iqbal*, 556 U.S. at 678 (holding that "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice"); *Id.* (holding that a claim is plausible when "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged").

The Second Amended Complaint seeks monetary damages, including compensatory damages not limited to Defendants' individual capacities. *See* Second Am. Compl. at 16 (seeking in the Prayer for Relief "Compensatory damages in an amount to be determined at trial"). Such claims are barred by the Eleventh Amendment because "an official-capacity suit is, in all respects other than name, to be treated as a suit against the entity." *Graham*, 473 U.S. at 166. The Second Amended Complaint does not allege that the State of Connecticut has waived its sovereign immunity, nor does it identify any congressional abrogation applicable to Plaintiffs' § 1983 claims.

Nor do Plaintiffs plausibly allege an ongoing violation sufficient to invoke the *Ex parte Young* exception. Defendants assert that Defendant Brayfield no longer serves as Plaintiff Petitpas's parole officer and that supervision has been transferred to another officer. Defs.' Mem. in Supp. at 16 (stating that "Defendant Brayfield is no longer the Plaintiff's parole officer. P.O. Huff is the Plaintiff's current parole officer").

Even accepting Plaintiffs' characterization of their claims as seeking prospective relief, the allegations, as pleaded, do not describe an ongoing violation of federal law attributable to these Defendants. *See Papasan*, 478 U.S. at 277–78 (explaining that *Young* "has been focused on

cases in which a violation of federal law by a state official is ongoing as opposed to cases in which federal law has been violated at one time or over a period of time in the past").

Accordingly, all official-capacity claims against Defendants Brayfield, Plourd, and Wilkey will be dismissed.

### B. The First Amendment Retaliation Claims

To state a First Amendment retaliation claim under § 1983, a plaintiff must plausibly allege "(1) that the speech or conduct at issue was protected, (2) that the defendant took adverse action against the plaintiff, and (3) that there was a causal connection between the protected speech and the adverse action." *Dolan v. Connolly*, 794 F.3d 290, 294 (2d Cir. 2015). An adverse action is conduct that "would deter a similarly situated individual of ordinary firmness from exercising his or her constitutional rights." *Gill v. Pidlypchak*, 389 F.3d 379, 381 (2d Cir. 2004).

Because parole supervision necessarily involves discretionary decisionmaking, retaliation claims arising in that context require "non-conclusory allegations" permitting an inference that the challenged actions were motivated by protected activity rather than legitimate supervisory concerns. *Davis v. Goord*, 320 F.3d 346, 353 (2d Cir. 2003) (noting that retaliation claims "are prone to abuse" and must be pleaded with care). At the pleading stage, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678.

Chad Petitpas and Diana Tirado jointly argue that Brayfield retaliated against Petitpas for engaging in protected activity, including pursuing ongoing federal civil rights litigation. Pls.' Mem. in Opp'n at 6 (asserting that Plaintiff had "two active federal civil rights cases pending" and describing the "ongoing nature of his protected litigation activity"). They further point to a sequence of events following Brayfield's assignment as parole officer in February 2023,

including interference with housing approval, refusal to proceed with the Approved Supervisor

process if counsel were present, and the imposition of heightened supervision requirements

shortly after Petitpas independently obtained contact information for the victim advocate. Second

Am. Compl. at 5–9 (*Id.* at 5 (alleging that "upon transfer of supervision to Brayfield, she

deliberately interfered with Plaintiff's housing by falsely representing to his landlord that the

property would be listed on the Connecticut Sex Offender Registry"); *Id.* at 7 (stating that "[t]he

approved supervisor meeting will not be scheduled if you want your attorney present"); *Id.* at 8

(alleging that Brayfield took "explicit punitive action after Plaintiff independently obtained

Embleton's phone number by ordering him to report to a police substation the following day,

where she placed him on GPS monitoring and mandated anger management classes, explicitly as

punishment for obtaining this publicly available contact information")).

Defendants respond that Plaintiffs rely on temporal proximity and disagreement with

discretionary parole decisions, which is insufficient as a matter of law to establish retaliatory

motive. Defs.' Mem. in Supp. at 18–21 (arguing that Plaintiff "fails to establish a causal

connection," relies on "conclusory" assertions, and that the six-year gap between the 2017

lawsuits and 2023 supervision decisions is "insufficient to support Plaintiff's retaliation claim").

Defendants argue that the alleged actions fall squarely within the discretion afforded to parole

officers and are equally consistent with legitimate supervisory objectives. Defs.' Mem. in Supp.

at 21–22 (arguing that "[t]he Board of Pardons and Paroles has independent decision-making

authority to establish the conditions of special parole and to revoke special parole" and that the

term of special parole is imposed "to ensure public safety"). In reply, Defendants reiterate that

Plaintiffs fail to allege facts demonstrating that protected activity was a substantial or motivating

factor for any challenged action. Defs.' Reply at 6–7 (arguing that Plaintiff "does not allege any

plausible facts demonstrating a causal relation" and that the allegations do not support an inference that protected conduct was "a substantial or motivating factor for the alleged adverse actions taken").

The Court agrees in part, and disagrees in part.

Chad Petitpas has adequately alleged that he engaged in protected activity. The pursuit of civil rights litigation, communications with counsel, and efforts to seek judicial redress constitute conduct protected by the First Amendment. See *Gagliardi v. Vill. of Pawling*, 18 F.3d 188, 194–95 (2d Cir. 1994) (stating that "[t]he rights to complain to public officials and to seek administrative and judicial relief are protected by the First Amendment").

The Second Amended Complaint alleges that the alleged retaliation arose from Petitpas's prior civil rights litigation and that Brayfield acted with awareness of that litigation upon assuming supervision. Second Am. Compl. at 3–4 (alleging that "[t]he pattern of institutional retaliation traces its origins to multiple successful civil rights actions initiated by Plaintiff Petitpas against the Department of Correction" and describing prior lawsuits, including *Petitpas v. Hogan* and *Petitpas v. Martin*, in which Plaintiff allegedly secured settlements and relief addressing "systematic constitutional violations").

He has also plausibly alleged adverse action as to Brayfield. Second Am. Compl. at 5–9. The Second Amended Complaint describes multiple supervisory actions that, taken together, could deter a person of ordinary firmness from continuing to engage in protected activity. Second Am. Compl. at 5–9 (*Id.* at 5 (alleging that "upon transfer of supervision to Brayfield, she deliberately interfered with Plaintiff's housing by falsely representing to his landlord that the property would be listed on the Connecticut Sex Offender Registry"); *Id.* at 7 (stating that "[t]he approved supervisor meeting will not be scheduled if you want your attorney present"); *Id.* at 8

(alleging that Brayfield took "explicit punitive action after Plaintiff independently obtained Embleton's phone number by ordering him to report to a police substation the following day, where she placed him on GPS monitoring and mandated anger management classes, explicitly as punishment for obtaining this publicly available contact information")).

The Second Amended Complaint further alleges that this conduct included additional affirmative acts, including creation of "a false report regarding the spare bedroom in Plaintiffs residence," imposition of "excessive and unannounced home visits designed to disrupt Plaintiff's reintegration," arbitrary management of work-pass renewals, and issuance of a work pass "with intentionally incorrect information, listing Plaintiff's deceased mother's address (130 Sunrise Ave) instead of his actual address (141 Linden Street)." *Id*. at 6–7. Taken together, these allegations plausibly describe adverse action sufficient at the pleading stage.

The causation element presents a closer question. As Defendants correctly note, temporal proximity alone is generally insufficient to establish retaliatory motive. *See Slattery v. Swiss Reinsurance Am. Corp.*, 248 F.3d 87, 95 (2d Cir. 2001) (explaining that "[w]here timing is the only basis for a claim of retaliation, and gradual adverse job actions began well before the plaintiff had ever engaged in any protected activity, an inference of retaliation does not arise").

But Chad Petitpas alleges more than mere temporal proximity. The Second Amended Complaint alleges that Brayfield expressly conditioned progress in the Approved Supervisor process on the absence of counsel and imposed new supervisory requirements immediately after Petitpas engaged in conduct related to that protected activity. Second Am. Compl. at 7–8 (alleging that "[t]he approved supervisor meeting will not be scheduled if you want your attorney present" and that Brayfield took "explicit punitive action after Plaintiff independently obtained Embleton's phone number by ordering him to report to a police substation the following day,

where she placed him on GPS monitoring and mandated anger management classes, explicitly as punishment for obtaining this publicly available contact information")).

At the pleading stage, and drawing all reasonable inferences in Plaintiffs' favor, these allegations permit an inference that protected activity was a motivating factor in at least some of Brayfield's actions. *See Espinal v. Goord*, 558 F.3d 119, 129 (2d Cir. 2009) (holding that allegations of temporal proximity may be "sufficient to support an inference of a causal connection"). This conclusion rests on the specific allegations regarding Brayfield's own conduct and statements, not on generalized disagreement with parole supervision.[1]

The Second Amended Complaint does not plausibly allege, however, retaliatory involvement by Plourd or Wilkey, nor does it support a theory of supervisory or institutional retaliation. *See Iqbal*, 556 U.S. at 676 (stating that "[b]ecause vicarious liability is inapplicable to Bivens and § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution").

Accordingly, the motion to dismiss is denied as to the First Amendment retaliation claim against Defendant Lisa Brayfield in her individual capacity and granted as to all of the other Defendants.

### C. The Fourteenth Amendment Due Process Claim

To state a claim for violation of the Fourteenth Amendment's Due Process Clause under 42 U.S.C. § 1983, a plaintiff must plausibly allege that he was deprived of a protected liberty

---

[1] Although the Court allows Count I to proceed narrowly at this stage, Defendants may renew qualified immunity at the appropriate time on this claim. A qualified immunity defense may be presented on a motion to dismiss, but it "faces a formidable hurdle" at the Rule 12(b)(6) stage because the Court must accept the allegations as true and draw all reasonable inferences in Plaintiffs' favor. *McKenna v. Wright*, 386 F.3d 432, 436 (2d Cir. 2004). Qualified immunity nevertheless shields officials from liability unless Plaintiffs plausibly allege the violation of a constitutional right that was clearly established at the time of the challenged conduct. *See Johnson v. Perry*, 859 F.3d 156, 170 (2d Cir. 2017). *See also id.* (stating that "[t]he contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right.") (citations and internal quotation marks omitted).

interest without constitutionally adequate process, or that the defendant engaged in conduct so egregious and arbitrary as to violate substantive due process. *See Mathews v. Eldridge*, 424 U.S. 319, 333 (1976) (explaining that "identification of the specific dictates of due process generally requires consideration of three distinct factors: First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail"); *Cnty. of Sacramento v. Lewis*, 523 U.S. 833, 846 (1998) (explaining that substantive due process protects against conduct that "shocks the conscience").

Chad Petitpas alleges that Brayfield violated his procedural and substantive due process rights by imposing punitive parole conditions and restrictions without notice, justification, or opportunity to challenge them. He alleges that Brayfield violated his due process rights by "imposing arbitrary conditions and restrictions without providing proper notice, hearing, or appeal opportunities" and by "implementing punitive measures, including GPS monitoring, without valid justification or procedural protections." Second Am. Compl. at 9.

According to the Second Amended Complaint, after becoming Plaintiff Petitpas's parole officer in February 2023, Brayfield "engaged in a calculated campaign of retaliation" that included "imposing arbitrary and punitive conditions not required by parole regulations, including excessive and unannounced home visits," "failing to provide Plaintiff with a renewed work pass necessary for his employment," "deliberately interfer[ing] with Plaintiff's housing," and "taking explicit punitive action … by ordering him to report to a police substation … where

she placed him on GPS monitoring and mandated anger management classes." Second Am.
Compl. at 5–8.

The Second Amended Complaint further alleges that Brayfield refused to permit
Petitpas's attorney to attend Approved Supervisor meetings, fabricated information regarding
Petitpas's living arrangements, and prohibited phone contact, and that Wilkey later blocked
Petitpas's access to his ct.gov email account. *See* Second Am. Compl. at 6–9 (alleging that
Brayfield "refus[ed] to schedule meetings if Plaintiff's attorney was present," "creat[ed] a false
report regarding the spare bedroom in Plaintiffs residence, claiming it was set up for a minor
child when it was actually prepared for Plaintiff's ailing mother" and "claiming it was set up for a
minor child when it was actually prepared for Plaintiff's ailing mother," and "prohibit[ed] phone
contact on November 4, 2024").

The Defendants argue that the Plaintiff's due process claim fails because special parole
entails "conditional liberty properly dependent on observance of special parole restrictions," and
because the Board of Pardons and Paroles has statutory authority to establish supervision
conditions, including electronic monitoring. Defs.' Mem. in Supp. at 22–23 (arguing that special
parole is "conditional liberty properly dependent on observance of special parole restrictions"
and that Conn. Gen. Stat. § 53a-30(a)(14) "expressly authorizes the use of electronic monitoring,
including GPS tracking, as a condition of supervision").

The Defendants further argue that the Second Amended Complaint does not allege the
denial of any process constitutionally required in the parole context, nor conduct rising to the
level of a substantive due process violation. *Id*.

The Court agrees.

As a threshold matter, while parolees retain a conditional liberty interest protected by the Due Process Clause, that interest is significantly limited by the terms of parole supervision. *See Morrissey v. Brewer*, 408 U.S. 471, 480 (1972) (explaining that the case concerns "whether the Due Process Clause of the Fourteenth Amendment requires that a State afford an individual some opportunity to be heard prior to revoking his parole"). The procedural protections identified in *Morrissey* attach in the context of parole revocation or comparable deprivations of liberty, not to day-to-day supervisory decisions regarding reporting, housing verification, or program participation. *See Id.*  (finding that "[r]evocation deprives an individual, not of the absolute liberty to which every citizen is entitled, but only of the conditional liberty properly dependent on observance of special parole restrictions"). The Second Amended Complaint does not allege that Petitpas's parole was revoked, that formal disciplinary proceedings were initiated, or that he was denied a revocation hearing or similar process.

Nor does the Second Amended Complaint plausibly allege that Brayfield deprived Petitpas of a protected liberty interest without constitutionally adequate process. The conditions and requirements identified in the Second Amended Complaint, including reporting obligations, work-pass administration, housing verification, and program participation—fall within the ordinary incidents of parole supervision. *See Doe v. Simon*, 221 F.3d 137, 139-140 (2d Cir. 2000) stating that the court was "unwilling to import wholesale the due process requirements for parole rescissions into the admittedly different arena of conditional release," and holding that "the process due" was, "at minimum, notice that he would not be released without" the condition, "an explanation of why this special condition was being imposed, and an opportunity to dispute the grounds for application of the special condition").

Although Petitpas alleges that these decisions were unfair, retaliatory, or improperly motivated, disagreement with the manner in which supervisory discretion is exercised does not, without more, amount to a procedural due process violation. *See Iqbal*, 556 U.S. at 678 (requiring that "the plaintiff plead[ ] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.")

The Second Amended Complaint likewise fails to state a substantive due process claim. To rise to the level of a substantive due process violation, government conduct must be "so egregious, so outrageous, that it may fairly be said to shock the contemporary conscience." *Lewis*, 523 U.S. at 846. Even accepting the allegations here as true, the conduct attributed to Brayfield—while described by Plaintiffs as punitive, obstructive, or malicious—does not plausibly rise to this demanding standard. The alleged actions concern parole supervision decisions, communication restrictions, and enforcement of supervision requirements, not conduct of the type that courts have recognized as conscience-shocking under substantive due process doctrine. *See Jacobs v. Ramirez*, 400 F.3d 105, 106 (2d Cir. 2005) (per curiam) (explaining that "[a] parolee, although not in the state's physical custody, is nonetheless in its legal custody, and his or her freedom of movement, while not as restricted as that of an incarcerated prisoner, is nonetheless somewhat curtailed"); *Stovall v. Wilkins*, No. 15-CV-2380 (KMK), 2016 WL 5478509, at *3–4 (S.D.N.Y. Sept. 29, 2016) (noting the same "legal custody" principle and explaining that "the limitations imposed were extremely minimal: Plaintiff was merely required to report to a certain location at a certain time," and that "[b]ecause the limitations imposed by the state are minimal, so too are the duties it assumes").

Finally, to the extent this due process claim is framed as turning on the specific manner in which the Defendants handled administrative complaints or communications with counsel, the

Due Process Clause "guarantees no particular form of procedure; it protects substantive rights," and instead "calls for such procedural protections as the particular situation demands." *Vapne v. Eggleston*, No. 04 Civ. 565 (NRB), 2004 WL 2754673, at *3 (S.D.N.Y. Dec. 1, 2004) (quoting *Nat'l Labor Relations Bd. v. Mackay Radio & Tel. Co.*, 304 U.S. 333, 351 (1938); and *Donk v. Miller*, 363 F.3d 159, 163 (2d Cir. 2004) (quoting *Morrison v. Brewer*, 408 U.S. 471, 481 (1972))). As a result, the Plaintiffs have not plausibly alleged a violation of procedural or substantive due process.

Accordingly, the Fourteenth Amendment due process claim will be dismissed.

### D. The Supervisory Liability Claims

To state a claim for supervisory liability under 42 U.S.C. § 1983, a plaintiff must plausibly allege that the supervisor, "through the official's own individual actions, has violated the Constitution." *Iqbal*, 556 U.S. at 676 (rejecting respondeat superior liability under § 1983). In the Second Circuit, a supervisory official may be held liable only where the plaintiff plausibly alleges the supervisor's personal involvement in the constitutional violation, including by direct participation or by deliberate indifference to a known and ongoing constitutional harm. *Tangreti v. Bachmann*, 983 F.3d 609, 618–19 (2d Cir. 2020) (holding that "after *Iqbal*, there is no special rule for supervisory liability" and that a plaintiff must plead and prove "that each Government-official defendant, through the official's own individual actions, has violated the Constitution"). *Kravitz v. Purcell*, 87 F.4th 111, 129 (2d Cir. 2023) (stating that "to 'establish a defendant's individual liability in a suit brought under § 1983, a plaintiff must show … the defendant's personal involvement in the alleged constitutional deprivation'" (quoting *Grullon v. City of New Haven*, 720 F.3d 133, 138 (2d Cir. 2013))).

Chad Petitpas alleges that Brian Plourd, as Brayfield's direct supervisor, is liable for constitutional violations arising from Brayfield's parole supervision. *See* Second Am. Compl. at 10–11 (alleging that "Defendant Plourd, as Brayfield's direct supervisor, participated in and enabled constitutional violations" and "violated Plaintiff Petitpas's constitutional rights through deliberate indifference to Defendant Brayfield's misconduct"). Specifically, the Second Amended Complaint alleges that Plourd received complaints and appeals regarding Brayfield's conduct, failed to intervene or correct her actions, and participated in or ratified certain decisions, including the refusal to permit counsel to attend Approved Supervisor meetings. *See* Second Am. Compl. at 10–11 (alleging "[r]eceiving Plaintiff's formal appeal on October 18, 2023 … yet deliberately failing to address the substantive concerns" and "directly participating in the denial of attorney presence at the Approved Supervisor meeting, when Brayfield explicitly stated this directive came from 'Both' herself and her supervisor").

Plourd also allegedly authorized a compliance check shortly after approving an out-of-state work pass and supported restrictions affecting housing and family contact. *See* Second Am. Compl. at 10–11, 15 (alleging "[a]uthorizing a retaliatory compliance check exactly one week after approving Plaintiff's out-of-state work pass" and "[i]mposing and supporting unconstitutionally restrictive conditions on Diana Tirado, arbitrarily prohibiting her from having any contact with minors in her own residence, even in Plaintiff's absence" and "[s]upporting and enforcing unconstitutionally broad restrictions that prohibited Tirado from having minors visit her own residence, even in Petitpas's absence").

Defendants argue that these allegations are insufficient to state a supervisory liability claim because the Second Amended Complaint does not plausibly allege that Plourd personally engaged in unconstitutional conduct or acted with deliberate indifference to a known

constitutional violation. Defs.' Mem. in Supp. at 27–28 (arguing that "Plaintiff fails to state a claim upon which relief can be granted against Defendant Plourd," that Plaintiff's allegations are "conclusory," and that the Court may consider Plaintiff's exhibits in determining that his claims "are not facially plausible").

Defendants emphasize that awareness of grievances or disagreement with supervisory decisions does not establish personal involvement under § 1983. *Id* at 27–28 (arguing that a plaintiff "must allege facts that establish the personal involvement of that defendant in the alleged constitutional violation" and that supervisory liability requires "plead[ing] and prov[ing] the elements of the underlying constitutional violation directly against the official").

The Court agrees.

As an initial matter, because the Court has concluded that the Second Amended Complaint fails to plausibly allege a due process violation and that the retaliation claim survives only narrowly as to Brayfield's own conduct, Plaintiffs must plausibly allege that Plourd himself engaged in conduct that independently violated the Constitution or that he was deliberately indifferent to an ongoing constitutional violation. *See Tangreti*, 983 F.3d at 618 (holding that "after *Iqbal*, there is no special rule for supervisory liability" and that a plaintiff must plead and prove "that each Government-official defendant, through the official's own individual actions, has violated the Constitution"); *Purcell*, 87 F.4th at 129 (2d Cir. 2023) (stating that "to 'establish a defendant's individual liability in a suit brought under § 1983, a plaintiff must show … the defendant's personal involvement in the alleged constitutional deprivation'" (quoting *Grullon v. City of New Haven*, 720 F.3d 133, 138 (2d Cir. 2013))).

The Second Amended Complaint does not meet that standard. The allegations against Plourd focus on his receipt of written complaints or appeals from Petitpas, his alleged failure to

take corrective action, and his purported support for, or refusal to override, Brayfield's supervisory decisions. *See* Second Am. Compl. at 10–11 (alleging that Plourd was "[r]eceiving Plaintiff's formal appeal on October 18, 2023 … yet deliberately failing to address the substantive concerns" and "[s]ystematically ignoring communications from Plaintiff's legal counsel for over a year").

Because supervisory liability turns on Plourd's own conduct, the Second Amended Complaint do more than assert conclusions about his role or awareness. "[T]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678. And allegations that a supervisor received complaints or was aware of grievances, without more, do not plausibly allege personal involvement in a constitutional violation. *See Iqbal*, 556 U.S. at 676 (stating that "[b]ecause vicarious liability is inapplicable to Bivens and § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution").

Nor does the Second Amended Complaint plausibly allege deliberate indifference by Plourd. To establish deliberate indifference, a plaintiff must plausibly allege that the supervisor had actual knowledge of an ongoing constitutional violation and consciously disregarded it. *Tangreti*, 983 F.3d at 619 (holding that "after *Iqbal*, there is no special rule for supervisory liability" and that a plaintiff must plead and prove "that each Government-official defendant, through the official's own individual actions, has violated the Constitution").

Here, the Second Amended Complaint does not plausibly allege that Plourd was aware of conduct by Brayfield that constituted a clearly established constitutional violation, nor does it allege facts showing that Plourd consciously chose to disregard such a violation. *Id.*  Instead, the Second Amended Complaint alleges disagreement with how parole supervision decisions were

made and dissatisfaction with Plourd's failure to intervene. *See* Second Am. Compl. at 10–11 (alleging that Plourd was "[r]eceiving Plaintiff's formal appeal … yet deliberately failing to address the substantive concerns" and "[s]ystematically ignoring communications from Plaintiff's legal counsel for over a year").

The Second Amended Complaint thus does not plausibly allege that Plourd was aware of conduct by Brayfield that constituted a clearly established constitutional violation, nor does it allege facts showing that Plourd consciously chose to disregard such a violation. *Richard v. Corcella*, No. 3:20-cv-1354 (CSH), 2023 WL 4595695, at *4 (D. Conn. July 18, 2023) (explaining that, under *Tangreti*, "there is no special rule for supervisory liability" and that "a plaintiff must plead and prove 'that each Government-official defendant, through the official's own individual actions, has violated the Constitution,'" and further explaining that "mere awareness of an issue is no longer sufficient to state a claim for supervisory liability" because a supervisor's " 'mere knowledge' . . . 'does not amount[ ] to the supervisor's violating the Constitution' "); *Burke v. Lamont*, No. 3:22-cv-00459 (JBA), 2022 WL 3997549, at *11 (D. Conn. Sept. 1, 2022) (explaining that, after *Tangreti*, "Personal involvement of a government official is not established 'by reason of [the official's] supervision of others who committed the violation,'" and explaining that "Mere awareness of an issue, however, is not sufficient to state a claim for supervisory liability," because " 'mere knowledge . . .' is not sufficient because that knowledge does not amount[ ] the supervisor's violating the Constitution").

Instead, the Second Amended Complaint alleges that Plourd "receiv[ed] Plaintiff's formal appeal … yet deliberately fail[ed] to address the substantive concerns," "authoriz[ed] a retaliatory compliance check," and "impos[ed] and support[ed] unconstitutionally restrictive conditions." Second Am. Compl. at 10. These allegations amount to dissatisfaction with Plourd's

supervisory responses after the fact, not facts plausibly showing that Plourd, "through [his] own individual actions," violated the Constitution. *See Tangreti*, 983 F.3d at 618 (requiring a plaintiff to plead and prove "that each Government-official defendant, through the official's own individual actions, has violated the Constitution"); *Burke*, 2022 WL 3997549, at *11 ( "[m]ere awareness of an issue, however, is not sufficient to state a claim for supervisory liability"); *Richard*, 2023 WL 4595695, at *4 ( "mere awareness of an issue is no longer sufficient to state a claim for supervisory liability.")

Accordingly, Plaintiffs have failed to plausibly allege a supervisory liability claim against Plourd, and this claim will be dismissed as to him.

### E. The Deliberate Indifference Claim

To state a claim for supervisory liability or deliberate indifference under 42 U.S.C. § 1983, a plaintiff must plausibly allege that the supervisory official, through his own individual actions, violated the Constitution. "[O]nly a complaint that states a plausible claim for relief survives a motion to dismiss." *Iqbal*, 556 U.S. at 679 (holding that "only a complaint that states a plausible claim for relief survives a motion to dismiss"). The complaint must plead factual content supporting a reasonable inference that the supervisor's own conduct violated the Constitution. *Iqbal*, 556 U.S. at 676 (stating that "[b]ecause vicarious liability is inapplicable to Bivens and § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution").

In the Second Circuit, a plaintiff must establish that the supervisor personally engaged in unconstitutional conduct or acted with deliberate indifference to a known and ongoing constitutional violation. *Tangreti v. Bachmann*, 983 F.3d 609, 618–19 (2d Cir. 2020) (holding that "after *Iqbal*, there is no special rule for supervisory liability" and that a plaintiff must plead and

prove "that each Government-official defendant, through the official's own individual actions, has violated the Constitution").

Chad Petitpas alleges that Matthew Wilkey, a higher-level supervisory official, is liable for deliberate indifference to Brayfield's alleged misconduct. *See* Second Am. Compl. at 12 (alleging that Wilkey "[d]espite receiving a formal escalation from licensed therapist William F. Hobson, LPC, on July 11, 2024 … regarding Brayfield's failure to provide Plaintiff with a required work pass," "tak[ing] insufficient corrective action," and "[r]emaining deliberately silent and complicit when presented with evidence of Brayfield's harassment").

The Second Amended Complaint further alleges that Wilkey failed to take meaningful corrective or disciplinary action after receiving those complaints and permitted supervisory decisions to proceed unchecked. *See* Second Am. Compl. at 12–13 (alleging "[f]ailing to properly supervise Brayfield … which resulted in Brayfield issuing a work pass … with Plaintiff's deceased mother's address," and "[t]aking no disciplinary action").

The Defendants argue that these allegations are insufficient to state a claim because the Second Amended Complaint does not plausibly allege that Wilkey personally engaged in unconstitutional conduct or consciously disregarded a known constitutional violation. Defs.' Mem. in Supp. at 27 (arguing that "Plaintiff has not alleged any facts supporting the conclusion that Defendant Wilkey … was sufficiently personally involved and violated the Plaintiff's constitutional rights" and that "[t]he Plaintiff must allege facts that establish the personal involvement of that defendant in the alleged constitutional violation"). The Defendants further argue that the Second Amended Complaint alleges, at most, dissatisfaction with supervisory oversight rather than deliberate indifference. *Id*. (arguing that Plaintiff "has failed to state a valid claim of Supervisory liability").

26

The Defendants argue that these allegations are insufficient to state a claim because the Second Amended Complaint does not plausibly allege that Wilkey personally engaged in unconstitutional conduct or consciously disregarded a known constitutional violation. Defs.' Mem. in Supp. at 33–36. Defendants further contend that the Second Amended Complaint alleges, at most, dissatisfaction with supervisory oversight rather than deliberate indifference. *Id*.

The Court agrees.

The Plaintiffs must plausibly allege that Wilkey personally violated the Constitution or acted with deliberate indifference to an ongoing constitutional violation. *Tangreti*, 983 F.3d at 618–19 (holding that "after *Iqbal*, there is no special rule for supervisory liability" and that a plaintiff must plead and prove "that each Government-official defendant, through the official's own individual actions, has violated the Constitution"). The Second Amended Complaint does not do so.

The allegations against Wilkey consist primarily of assertions that he was informed of complaints and failed to act. Second Amended Complaint at 12–13 (alleging that Defendant Wilkey was "systematically failing to address documented concerns about Defendant Brayfield's misconduct," including [f]ailing to address Plaintiff's repeated complaints about Defendant Brayfield's misconduct" and "[f]ailing to take any disciplinary action against Defendant Brayfield for her misconduct, despite being fully apprised of her actions," and further alleging that Plaintiffs' attempt to reach him through his official email was rejected with the message "Recipient address rejected: Access denied,"). Awareness of complaints or grievances, without more, however, does not plausibly allege personal involvement in a constitutional violation. *See Iqbal*, 556 U.S. at 676 (stating that "[b]ecause vicarious liability is inapplicable to Bivens and §

1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution").

Here, the Second Amended Complaint does not plausibly allege that Wilkey was aware of conduct by Brayfield that clearly amounted to a constitutional violation, nor does it allege facts showing that Wilkey consciously chose to ignore such a violation. *Burke*, 2022 WL 3997549, at *11 (stating that "[m]ere awareness of an issue, however, is not sufficient to state a claim for supervisory liability"); *Richard*, 2023 WL 4595695, at *4 (stating that "mere awareness of an issue is no longer sufficient to state a claim for supervisory liability," and that "[a] supervisor's 'mere knowledge ...' is not sufficient because that knowledge does not amount[ ] to the supervisor's violating the Constitution" (quoting *Tangreti*, 983 F.3d at 616–17)).

Instead, the allegations reflect disagreement with how supervisory concerns were handled and dissatisfaction with the absence of corrective action. Absent plausible allegations that Wilkey directed, approved, or knowingly acquiesced in unconstitutional conduct, a claim for supervisory liability fails. *Richard*, 2023 WL 4595695, at *4 (stating that "[a] supervisor's 'mere knowledge ...' is not sufficient because that knowledge does not amount[ ] to the supervisor's violating the Constitution" (quoting *Tangreti*, 983 F.3d at 616–17)); *Burke*, 2022 WL 3997549, at *11 (stating that "[m]ere awareness of an issue, however, is not sufficient to state a claim for supervisory liability").

Accordingly, the Plaintiffs have failed to plausibly allege a claim for supervisory liability or deliberate indifference against Wilkey, and this claim will be dismissed as to him.

### F. The First Amendment Right to Family and Intimate Association Claim

The Constitution protects a substantive right to family integrity and intimate association under the First and Fourteenth Amendments. *Roberts v. U.S. Jaycees*, 468 U.S. 609, 619–20

(1984) ("deep attachments and commitments to the necessarily few other individuals with whom one shares not only a special community of thoughts, experiences, and beliefs but also distinctively personal aspects of one's life").

This protection extends to relationships "that attend the creation and sustenance of a family," including marriage, cohabitation, and the raising of children. *Sanitation & Recycling Indus., Inc. v. City of New York*, 107 F.3d 985, 996 (2d Cir. 1997) (describing the scope of intimate association). At the same time, the right is not absolute and may be subject to reasonable restrictions where the government acts pursuant to legitimate objectives. *Adler v. Pataki*, 185 F.3d 35, 42–43 (2d Cir. 1999) (stating that "[w]herever the line might be drawn that separates a state's permissible and impermissible actions against an employee based on a spouse's conduct," the plaintiff's discharge "because of his wife's lawsuit is well across the line").

Diana Tirado alleges that Lisa Brayfield and Brian Plourd interfered with her right to intimate association by enforcing parole-related restrictions that prevented minor children from visiting her residence and by obstructing the Approved Supervisor process. *See* Second Am. Compl. at 14–16 (alleging that Brayfield imposed "arbitrary restrictions prohibiting Tirado from having any minor children, including her own, visit her residence" and created "arbitrary barriers to the Approved Supervisor application process, preventing Tirado from obtaining approval"; alleging that Plourd "[s]upport[ed] and enforc[ed] unconstitutionally broad restrictions that prohibited Tirado from having minors visit her own residence, even in Petitpas's absence" and "[d]eliberately ignor[ed] legal counsel's communications regarding the Approved Supervisor application for over a year"; alleging that Defendants caused harm by "[c]ausing severe harm to Tirado's relationship with her minor child by deliberately refusing to process the Approved

Supervisor application, effectively preventing normal family interactions and causing emotional distress to the minor child").

The Defendants argue that the Plaintiffs fail to state a family-association claim because Diana Tirado's allegations arise from the parole supervision of Chad Petitpas and the enforcement of "lawful conditions of his parole," rather than any direct regulation of Tirado's conduct, and because those parole conditions were imposed "for the protection of the public." Defs.' Mem. in Supp. at 28–29 (stating that Tirado's claim is "based on the supervision of her fiancé, Plaintiff Petitpas, who is currently serving a ten (10) year term of special parole," and asserting that Defendants "were responsible for ensuring Plaintiff Petitpas' compliance with the lawful conditions of his parole—conditions imposed for the protection of the public").

The Defendants further argue that the Second Amended Complaint does not plausibly allege conduct that is arbitrary, targeted, or conscience-shocking, because the right is implicated only where government action occurs "without any reasonable justification in the service of a legitimate governmental objective," and "only the most egregious official conduct" is actionable. Defs.' Mem. in Supp. at 28–29 (quoting *Tenenbaum v. Williams*, 193 F.3d 581, 600 (2d Cir. 1999), and *Cnty. of Sacramento v. Lewis*, 523 U.S. 833, 846 (1998), that the right is implicated only where a government actor exercises power "without any reasonable justification in the service of a legitimate governmental objective," and stating that "only the most egregious official conduct can be said to be 'arbitrary in the constitutional sense' and therefore unconstitutional").

The Court agrees.

At the pleading stage, "[o]nly a complaint that states a plausible claim for relief survives a motion to dismiss." *Iqbal*, 556 U.S. at 679 (holding that "only a complaint that states a plausible claim for relief survives a motion to dismiss"). As an initial matter, the Second

Amended. Complaint frames the complained of restrictions as arising from Chad Petitpas's parole supervision, including the Approved Supervisor process, rather than as independent restrictions directed at Diana Tirado. *See* Second Am. Compl. at 15 (alleging "[p]urposely stalling the Approved Supervisor application process, which was a prerequisite for Plaintiff Tirado to officially reside with Plaintiff Petitpas and support his parole obligations").

The Second Amended Complaint alleges that Lisa Brayfield and Brian Plourd interfered with Tirado's family relationships through parole-related conditions concerning minor children in Tirado's residence and the Approved Supervisor process. *See* Second Am. Compl. at 15–16 (alleging "[i]mposing arbitrary restrictions prohibiting Plaintiff Tirado from having any minor children, including her own, visit her residence, even in Plaintiff Petitpas's absence," and "[c]ausing severe harm to Tirado's relationship with her minor child by deliberately refusing to process the Approved Supervisor application, effectively preventing normal family interactions and causing emotional distress to the minor child").

A right to family integrity and intimate association is implicated only by conduct that is constitutionally arbitrary. *See Tenenbaum v. Williams*, 193 F.3d 581, 600–01 (2d Cir. 1999) (quoting "to remain together without the coercive interference of the awesome power of the state"); *Cnty. of Sacramento v. Lewis*, 523 U.S. 833, 846 (1998) (stating that "only the most egregious official conduct can be said to be 'arbitrary in the constitutional sense' and therefore unconstitutional"). Defs.' Mem. in Supp. at 28–29 (quoting that the right is implicated only where a government actor exercises power "without any reasonable justification in the service of a legitimate governmental objective," and stating that "only the most egregious official conduct can be said to be 'arbitrary in the constitutional sense' and therefore unconstitutional").

Here, the Second Amended Complaint alleges that the complained-of interference arose in connection with Chad Petitpas's parole supervision and the Approved Supervisor process. *See* Second Am. Compl. at 15 (alleging that Brayfield was "[c]reating arbitrary barriers to the Approved Supervisor application process, preventing Tirado from obtaining approval"); *see also* Second Am. Compl. at 15 (alleging "[i]mposing arbitrary restrictions prohibiting Plaintiff Tirado from having any minor children, including her own, visit her residence, even in Plaintiff Petitpas's absence").

But the Second Amended Complaint does not plausibly allege conduct sufficient to meet the "arbitrary in the constitutional sense" threshold. *See Tenenbaum v. Williams*, 193 F.3d 581, 600 (2d Cir. 1999) (quoting that the right is implicated only where a government actor exercises power "without any reasonable justification in the service of a legitimate governmental objective"); *Cnty. of Sacremento v. Lewis*, 523 U.S. 833, 846 (1998) (stating that "only the most egregious official conduct can be said to be 'arbitrary in the constitutional sense' and therefore unconstitutional"). The Second Amended Complaint alleges that the Defendants imposed "arbitrary restrictions prohibiting Plaintiff Tirado from having any minor children, including her own, visit her residence, even in Plaintiff Petitpas's absence," and "[c]reating arbitrary barriers to the Approved Supervisor application process, preventing Tirado from obtaining approval." Second Am. Compl. at 15.

These allegations, as pleaded, however, describe disputed parole-supervision restrictions and delays in the Approved Supervisor process, not facts plausibly showing that Defendants exercised power "without any reasonable justification in the service of a legitimate governmental objective" or engaged in "the most egregious official conduct." *See Lewis*, 523 U.S. at 846

(stating that "only the most egregious official conduct can be said to be 'arbitrary in the constitutional sense' and therefore unconstitutional").

Accordingly, because Plaintiffs have failed to plausibly allege a violation of the right to family or intimate association, this claim will be dismissed as to Defendants Brayfield and Brian Plourd.

### G. The Claims Against April Embleton

To state a claim under 42 U.S.C. § 1983, a plaintiff must plausibly allege that the challenged conduct was taken "under color of state law." "[O]nly a complaint that states a plausible claim for relief survives a motion to dismiss." *Iqbal*, 556 U.S. at 679 (holding that "only a complaint that states a plausible claim for relief survives a motion to dismiss"). A private individual may be deemed a state actor only in limited circumstances, such as where the private party performs a public function traditionally reserved to the state, acts under state compulsion, or is a willful participant in joint activity with the state. *See Sybalski v. Indep. Grp. Home Living Program, Inc.*, 546 F.3d 255, 257–58 (2d Cir. 2008) (explaining that a private entity's conduct is attributable to the state only in limited circumstances, including where the entity acts under the state's "coercive power," is a "willful participant in joint activity with the [s]tate," or "has been delegated a public function by the [s]tate," and further that "the plaintiff must allege that the state was involved 'with the activity that caused the injury'"). Conclusory allegations of cooperation or parallel conduct are insufficient to satisfy this requirement. *Ciambriello v. County of Nassau*, 292 F.3d 307, 324 (2d Cir. 2002) (holding that "[a] merely conclusory allegation that a private entity acted in concert with a state actor does not suffice" to state a § 1983 claim against the private entity).

Chad Petitpas alleges that April Embleton violated his First Amendment right to petition by obstructing access to the Approved Supervisor process and related administrative remedies. *See* Second Am. Compl. at 13–14 (alleging that "[d]efendant Embleton violated Plaintiff Petitpas's First Amendment right to petition the government for redress of grievances by deliberately obstructing access to administrative remedies," that Embleton "[d]eliberately fail[ed] to respond to over 60 documented phone calls from Plaintiff's attorney seeking clarification about the Approved Supervisor process," and that Embleton "[p]articipat[ed] in a coordinated effort to obstruct the Approved Supervisor application process").

Diana Tirado alleges that April Embleton violated her right to family and intimate association by refusing to engage in the Approved Supervisor process and thereby prolonging family separation. *See* Second Am. Compl. at 15–16 (alleging that "[d]efendant Embleton violated Plaintiff Tirado's constitutional rights by:" "[s]ystematically refusing to respond to communications regarding the Approved Supervisor application process," "[d]eliberately obstructing Tirado's ability to complete required procedures to normalize family relationships," and "[c]ausing severe harm to Tirado's relationship with her minor child by deliberately refusing to process the Approved Supervisor application, effectively preventing normal family interactions and causing emotional distress to the minor child"). Both claims rest on the premise that Embleton acted under color of state law. *See* Second Am. Compl. at 1 (listing "APRIL EMBLETON (Individual and Official Capacities)") and Second Am. Compl. at 3 (alleging that "[u]nder no claim of color of law are they permitted to place requirements or sanctions on individuals not convicted of a crime nor sentenced to their supervision by court of law").

April Embleton argues that the Second Amended Complaint fails to plausibly allege state action. Def. Embleton's Mem. in Supp. at 9 (arguing that "[n]owhere within the Second

Amended Complaint is Embelton alleged to be a state or government official," and that "Count V must fail on the basis that Embelton is not alleged to be a state or government official"). She further argues that the allegations amount to asserted non-action and generalized conclusions, not a legally cognizable claim. *Id.* (arguing that "Count V contains no allegation that Petitpas was somehow prevented (by Embelton or anyone else) to submit grievances in writing to government officials," and that "[t]he allegations within Count V are nothing more than sweeping, generalized conclusions about alleged inaction by Embelton").

The Plaintiffs respond that April Embleton "operates as an integral part of the state-mandated parole supervision system" and wields "effective veto power over court-ordered processes." Pls.' Mem. in Opp'n at 2.

In reply, April Embleton argues that the Plaintiffs must plausibly allege state action and cannot rely on conclusory "nexus" allegations. Reply at 4–5 (arguing that Plaintiffs must plausibly allege "a nexus between the private defendants and the State" by relying on more than "vague and conclusory" statements, and quoting *Ciambriello v. County of Nassau*, 292 F.3d 307, 324 (2d Cir. 2002), that "[a] merely conclusory allegation that a private entity acted in concert with a state actor does not suffice to state a § 1983 claim against the private entity").

The Court agrees.

The Second Amended Complaint does not plausibly allege that April Embleton acted under color of state law. As pleaded, Plaintiffs' allegations about April Embleton focus on conduct taken "despite her role as a victim advocate," including "[d]eliberately failing to respond to over 60 documented phone calls from Plaintiff's attorney seeking clarification about the Approved Supervisor process," "[s]ystematically ignoring all communications over the course of more than a year," and "[p]articipating in a coordinated effort to obstruct the Approved

35

Supervisor application process." Second Am. Compl. at 13–14 (COUNT V allegations). The Second Amended Complaint further alleges that April Embleton took steps to keep "her contact information remained unavailable to Plaintiff," including "collaborating with other defendants to punish Plaintiff when he obtained this publicly available information through independent means." *Id.* at 13–14.

These allegations, as pleaded, do not plausibly support attribution of April Embleton's conduct to the State. *See Sybalski v. Indep. Grp. Home Living Program, Inc.*, 546 F.3d 255, 257–58 (2d Cir. 2008) (explaining that a private entity's conduct is attributable to the state only in limited circumstances, including where the entity acts under the state's "coercive power," is a "willful participant in joint activity with the [s]tate," or "has been delegated a public function by the [s]tate," and further that "the plaintiff must allege that the state was involved . . . 'with the activity that caused the injury'"). Nor does the Second Amended Complaint plausibly allege joint action between April Embleton and state officials. Plaintiffs' allegations against April Embleton center on non-response and refusal to assist with the Approved Supervisor process, including allegations that she "systematically refus[ed] to respond to communications regarding the Approved Supervisor application process" and "systematically ignor[ed] all communications over the course of more than a year."  Second Am. Compl. at 14–15.

Those allegations describe refusal to participate and obstruction, not facts plausibly alleging that April Embleton was a willful participant in joint unconstitutional conduct with parole officials. *See Ciambriello v. Cnty. of Nassau*, 292 F.3d 307, 324 (2d Cir. 2002) (holding that "[a] merely conclusory allegation that a private entity acted in concert with a state actor does not suffice to state a § 1983 claim against the private entity"). Because the Plaintiffs have not plausibly alleged that April Embleton acted under color of state law, their § 1983 claims against

her fail as a matter of law. The Court therefore need not reach whether the alleged conduct, if attributable to the state, would otherwise state a First Amendment violation. *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 941 (1982) (holding that "[w]hile private misuse of a state statute does not describe conduct that can be attributed to the State . . .").

Accordingly, the Plaintiffs have failed to plausibly allege state action as to Embleton, and any Section 1983 clams brought against her will be dismissed.

### H. Leave to Amend

Under Federal Rule of Civil Procedure 15(a), a "party may amend its pleading once as a matter of course." Fed. R. Civ. P. 15(a)(1). "In all other cases, a party may amend its pleading only with the opposing party's written consent or the court's leave." Fed. R. Civ. P. 15(a)(2). While "the court should freely give leave when justice so requires," *Id.*, leave to amend may be denied because of "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, [or] futility of amendment." *Foman v. Davis*, 371 U.S. 178, 182 (1962).

In the Second Circuit, "[w]here it appears that granting leave to amend is unlikely to be productive, however, it is not an abuse of discretion to deny leave to amend." *Ruffolo v. Oppenheimer & Co.*, 987 F.2d 129, 131 (2d Cir. 1993). "An amendment to a pleading is futile if the proposed claim could not withstand a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6)." *Lucente v. Int'l Bus. Machines Corp.*, 310 F.3d 243, 258 (2d Cir. 2002).

In addition, "[a] pro se complaint should not be dismissed without the Court granting leave to amend at least once . . . [but] leave to amend a complaint may be denied when amendment would be futile." *Nielsen v. Rabin*, 746 F.3d 58, 62 (2d Cir. 2014). Where "the

problem . . . is substantive; better pleading will not cure it," "[r]epleading would thus be futile," and "[s]uch a futile request to replead should be denied." *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000).

For the dismissed claims above, the official-capacity claims, the Fourteenth Amendment due process claim, the supervisory liability claim against Brian Plourd, the deliberate indifference and supervisory liability claims against Matthew Wilkey, the First Amendment family and intimate association claims against Lisa Brayfield and Brian Plourd, and all claims against April Embleton, granting leave to amend would be futile. "[B]etter pleading will not cure" defects that are "substantive." *Cuoco*, 222 F.3d at 112.

Moreover, the Plaintiffs already have amended their pleading twice. See Am. Compl., ECF No. 42; Second Am. Compl., ECF No. 66. The Second Circuit has recognized that, where a litigant "was already granted one unsuccessful opportunity to amend" and identifies "no new facts that would cure" the deficiencies, a court may conclude that "granting leave to amend was futile." *Jackson v. Wells Fargo Home Mortg.*, 811 F. App'x 27, 30 (2d Cir. 2020) (summary order) (explaining that "Jackson was already granted one unsuccessful opportunity to amend her pleading with the court below," and "identifies no new facts that would cure the [first amended complaint's] deficiencies," so the district court "rightly concluded that granting leave to amend was futile") (citing *Cuoco*, 222 F.3d at 112). Similarly, where a plaintiff has already had an opportunity to amend and "took no steps to do so with [the] first opportunity to amend," there may be "no basis to believe that granting leave to amend a second time would induce the plaintiff to add the kind of allegations needed to establish a facially-plausible claim." *Driessen v. Royal Bank Int'l*, No. 3:14-CV-1300 VAB, 2015 WL 1245575, at *2 (D. Conn. Mar. 18, 2015).

Accordingly, Plaintiffs will not be granted leave to amend as to the official-capacity claims, the Fourteenth Amendment due process claim, the supervisory liability claim against Brian Plourd, the deliberate indifference and supervisory liability claims against Matthew Wilkey, the First Amendment family and intimate association claims against Lisa Brayfield and Brian Plourd, and all claims against April Embleton, and those claims are dismissed with prejudice.[2]

## IV.    CONCLUSION

For the foregoing reasons, Defendants' motions to dismiss are **GRANTED** in part and **DENIED** in part.

All official-capacity claims against Lisa Brayfield, Brian Plourd, and Matthew Wilkey, any Fourteenth Amendment due process claims, the supervisory liability claim against Brian Plourd, the deliberate indifference and supervisory claims against Matthew Wilkey, the First Amendment family and intimate association claims against Lisa Brayfield and Brian Plourd, and all claims against April Embleton are dismissed with prejudice.

This case will proceed only on the First Amendment retaliation claim against Lisa Brayfield in her individual capacity.

The Clerk of Court is respectfully directed to terminate Brian Plourd, Matthew Wilkey, and April Embleton as parties to this action.

**SO ORDERED** at New Haven, Connecticut, this 20th day of February, 2026.

---

[2] As alleged, qualified immunity also would attach to these dismissed claims because the Plaintiffs have not cited to – nor has this Court identified – any clearly established law which any of these Defendants would have known that they would be violating. *See Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)(recognizing that qualified immunity shields government officials from liability for money damages for violation of a right under federal law if "their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known."); *see also Nat'l Rifle Ass'n of Am. v. Vullo*, 49 F.4th 700, 714-- (2d Cir. 2022))("Although qualified immunity defenses are often decided on motions for summary judgment, in appropriate circumstances a district court may address qualified immunity at the pleadings stage.").

/s/ Victor A. Bolden
VICTOR A. BOLDEN
UNITED STATES DISTRICT JUDGE